**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**AMY M. GRENIER,**


                              **Plaintiff,**                    **6:13-cv-484**
                                                               **(GLS)**

             **v.**

**CAROLYN W. COLVIN,**
as Commissioner of Social
Security,

                              **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter W. Antonowicz            PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN              KAREN T. CALLAHAN
United States Attorney                 Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Amy M Grenier challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Grenier's arguments, the Commissioner's decision is reversed and remanded.

## II. Background

On February 8 and February 23, 2010, Grenier filed applications for SSI and DIB under the Social Security Act ("the Act"), respectively, alleging disability since October 18, 2009.  (Tr.[1] at 119, 126, 244-54.)  After her applications were denied, (*id.* at 157-62), Grenier requested a hearing before an Administrative Law Judge (ALJ), which was held on March 23, 2011, (*id.* at 40-84, 163).  On June 23, 2011, the ALJ issued an unfavorable decision finding that Monroe was not disabled.  (*Id.* at 133-49.) At Grenier's request, the Social Security Administration Appeals Council remanded the case back to the ALJ, who, after a second administrative

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (Dkt. No. 10.)

hearing, again denied Grenier's claim.  (*Id.* at 15-39, 85-118, 150-54, 187.)[2]
That decision became the final decision of the Commissioner when the
Appeals Council denied Grenier's request for review.  (*Id*. at 1-5.)

Grenier commenced the present action by filing her complaint on
April 29, 2013 wherein she sought review of the Commissioner's
determination.  (Compl.)  The Commissioner filed an answer and a certified
copy of the administrative transcript.  (Dkt. Nos. 9, 10.)  Each party,
seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 14, 17.)

## III.  **Contentions**

Grenier contends that the Commissioner's decision is tainted by legal
error and is not supported by substantial evidence.  (Dkt. No. 14 at 14-26.)
Specifically, Grenier claims that the ALJ erred in: (1) determining her
residual functional capacity (RFC); and (2) evaluating the credibility of her
subjective complaints.  (*Id.*)  The Commissioner counters that the
appropriate legal standards were used by the ALJ and his decision is also
supported by substantial evidence.  (Dkt. No. 17 at 7-18.)

## IV.  **Facts**

---

[2] The Appeals Council also instructed the ALJ to consolidate Grenier's February 2010 claims with her subsequent applications for SSI and DIB benefits, filed while her appeal of the ALJ's unfavorable decision was pending.  (Tr. at 152, 270-83.)

The court adopts the parties' undisputed factual recitations.  (Dkt. No. 14 at 3-12; Dkt. No. 17 at 2.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

## A.    RFC Determination

Grenier claims that the ALJ erred in determining her RFC.  (Dkt. No. 14 at 14-23.)  Specifically, Grenier argues that, in making this determination, the opinion of treating physician Vivienne Taylor should have been given controlling weight, and the ALJ should have fully considered the symptoms of Grenier's fibromyalgia and mental

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.  As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

impairments.  (*Id.*)  The court agrees that remand is appropriate here.

A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence[4] in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that Grenier suffers from various severe impairments, including fibromyalgia, but retains the RFC to perform light work that requires lifting and carrying twenty pounds occasionally and ten pounds frequently.  (Tr. at 25.)  According to the ALJ, Grenier can stand and/or walk for thirty minutes at a time, up to six hours of a workday, and sit for one hour at a time, up to eight hours of a workday.  (*Id.*)  Grenier can occasionally climb, balance, stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to respiratory irritants, extreme temperatures,

---

[4] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

and workplace hazards, such as moving machinery and heights. (*Id.*) Additionally, Grenier can perform unskilled work that is not fast paced, with no more than frequent contact with co-workers, supervisors and the general public. (*Id.*) In making his RFC determination, the ALJ relied on the opinions of consulting examiners Roberto Rivera, Tanya Perkins-Mwantuali and Dennis Noia, as well as non-examining psychological consultant T. Harding. (*Id.* at 29.)

On the other hand, the ALJ gave "no weight" to the opinion of Dr. Taylor that Grenier is only able to sit, stand, and walk for less than two hours in an eight-hour workday, needs to change positions at will, requires unscheduled breaks hourly to rest for thirty minutes, and should elevate her legs fifty percent of the time if she works a sedentary job. (*Id.* at 780-81, 812-13.) Further, Dr. Taylor opined that Grenier can occasionally lift and carry ten pounds, twist, and bend, rarely crouch or climb stairs, and never climb ladders. (*Id.* at 780, 813-14.) Dr. Taylor indicated that Grenier can only use her hands, fingers, and arms ten percent of an eight-hour workday, and would be absent from work more than four days a month due to her impairments. (*Id.* at 814.) Dr. Taylor also noted that Grenier's medications cause drowsiness and reduced concentration, and opined that

pain causes Grenier to be off-task fifty percent of the workday.  (*Id.* at 779, 781.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ must provide "good reasons for the weight given to the treating source's opinion."  *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted).  "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to her or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead her to a conclusion

of disability." *Id*. (internal quotation marks and citation omitted).

The ALJ provided the following reasons for discounting the opinions of Dr Taylor: (1) they were based entirely on Grenier's subjective complaints; (2) they were inconsistent with the other medical evidence of record, especially the physical examinations of record; (3) Dr. Taylor's treatment notes contain no examination of Grenier's hands, fingers, and arms, but Dr. Taylor assigned extreme limitations to their use; (4) Dr. Taylor only examined Grenier occasionally; and (5) Dr. Taylor's treatment records suggest that she was unaware of Grenier's regular marijuana use. (Tr. at 30.) The ALJ also discounted Dr. Taylor's opinions because they are in the form of "standard 'check-a box' or 'fill-in-a-blank'" reports, without significant explanation of the basis for the conclusions therein. ( *Id.* )

There is no dispute that Grenier suffers from fibromyalgia, as the ALJ found. (*Id.* at 21.) Nevertheless, a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008). In this case, the ALJ discounted Grenier's treating physician's opinion as to the severity of her fibromyalgia symptoms and limitations, due in part, to a lack of "consistent physical signs except for active trigger points." (Tr. at

8

27, 30.)  However, fibromyalgia is a disease that eludes objective

measurement.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir.

2003).  The Second Circuit has recognized that "[i]n stark contrast to the

unremitting pain of which fibrositis patients complain, physical

examinations will usually yield normal results—a full range of motion, no

joint swelling, as well as normal muscle strength and neurological

reactions."  *Id.* at 108-09 (internal quotation marks and citations omitted).

In fact, "the clinical signs and symptoms to support a fibromyalgia

diagnosis under the American College of Rheumatology (ACR) guidelines[]

includ[e] primarily widespread pain in all four quadrants of the body and at

least [eleven] of the [eighteen] specified tender points on the body."  *Id.* at

108.  Here, treatment notes document multiple paired tender points and

indicate that Grenier complained of generalized body aches, especially in

her shoulders, elbows, knees, and hands.  (Tr. at 578, 580, 599, 600, 604-

05, 609, 660, 692, 827, 844, 875, 893.)  Indeed, Dr. Perkins-Mwantuali's

consultative examination revealed "[thirteen] positive trigger points."  (*Id.* at

893.)  Thus, the ALJ erred in discounting Dr. Taylor's opinions due, in part,

to a lack of "significant clinical findings during physical examinations," and

her reliance "upon the complaints of [Grenier]."  (*Id.* at 30); *see*

*Green-Younger,* 335 F.3d at 107 (holding that a treating physician's reliance on a claimant's subjective complaints of pain caused by fibromyalgia "hardly undermines [the physician's] opinion as to her functional limitations, as [a] patient's report of complaints, or history, is an essential diagnostic tool." (internal quotation marks and citation omitted)).

Although the ALJ erred in discounting Dr. Taylor's opinion due to a perceived lack of objective evidence, the court is mindful that there may be reasons for continuing to discount her opinion. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (holding that the court may not "properly affirm an administrative action on grounds different from those considered by the agency"). Indeed, treatment notes from the offices of rheumatologists Martin Morell and Rathika Martyn confirm the diagnosis of fibromyalgia, but do not indicate the degree to which Grenier's fibromyalgia restricts her ability to perform basic work activities. (Tr. at 691-95, 744-66, 875-84.) However, after examining Grenier in December 2009, a nurse practitioner in Dr. Morell's office noted that she "strongly encouraged [Grenier] to continue work." (*Id.* at 693.) Thereafter, in November 2010, another nurse practitioner in Dr. Morell's office indicated that Grenier's fibromyalgia was stable. (*Id.* at 761-62.) In addition, in June 2011 Dr. Rathika "encouraged

[Grenier] on aerobic activities." (*Id.* at 878.) Thus, the court remands this case to the Commissioner to reconsider Grenier's fibromyalgia, and, consistent with his duty to develop the record, the ALJ should seek clarification from Grenier's treating sources regarding her functional capabilities, if necessary to make a determination.[5] *See Schmelzle v. Colvin*, Civil Action No. 6:12-cv-1159, 2013 WL 3327975 at *9, *14 (N.D.N.Y. July 2, 2013) (holding that remand to the Commissioner for further development of the evidence is appropriate "unless there is conclusive evidence of disability and no apparent basis to conclude that a more complete record might support the Commissioner's decision").

With respect to the ALJ's finding that Grenier can perform unskilled work that is not fast paced, with no more than frequent contact with co-workers, supervisors and the general public, (Tr. at 25), after reviewing the administrative record the court concludes that this determination is supported by substantial evidence. Specifically, the ALJ's mental RFC

---

[5] With respect to Dr. Taylor's opinion regarding Grenier's use of her hands, fingers, and arms, in addition to widespread pain, people who have fibromyalgia may experience a variety of other symptoms including numbness and tingling of the extremities. *See Questions and Answers About Fibromyalgia*, National Institute of Arthritis and Musculoskeletal and Skin Diseases, http://www.niams.nih.gov/Health_Info/Fibromyalgia/ (last visited June 30, 2014). Here, on numerous occasions Grenier complained of numbness and tingling, as well as stiffness and pain in her hands. (Tr. at 604, 696, 763, 811, 843, 871, 897.) Accordingly, the ALJ may need to seek clarification on Grenier's ability to use her arms and hands on remand.

determination is supported by the opinions of Dr. Noia and psychological consultant Harding, as well as Grenier's various Global Assessment of Functioning (GAF) scores throughout the record, which indicate that she suffered mild to moderate symptoms.[6] (*Id.* at 699-703, 710-23, 796, 839, 903, 921, 925.) Treatment notes completed by Grenier's therapist in March 2012 indicate that Grenier was handling stress better and was less depressed and anxious. (*Id.* at 921-22.) No further treatment was recommended at that time. (*Id.* at 922.) Although Grenier points to other evidence which she asserts indicates disabling mental limitations, (Dkt. No. 14 at 19), "whether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013).

---

[6] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004). A GAF score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in school, work, and social functioning. *See Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008). A score between sixty-one and seventy reflects a person with "'[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but [who is] generally functioning pretty well, has some meaningful interpersonal relationships.'" *Id.* at 262 (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)). A GAF of seventy-one to eighty "equates to symptoms that are transient and expected reactions to pyschosocial stresses and no more than a slight impairment in social, occupational or school functioning." *Kaminski v. Astrue*, No. 09-CV-655, 2012 WL 887468, at *7 (N.D.N.Y. Feb. 21, 2012) (internal quotation marks and citation omitted). Throughout the record, Grenier's GAF scores ranged from fifty-five to seventy-five. (Tr. at 796, 839, 903, 921, 925.)

## B.    Remaining Findings and Conclusions

Because Grenier's remaining contentions may be impacted by the subsequent proceedings directed by this Order, it would be premature of the court to address them at this juncture.  *See Christiana*, 2008 WL 759076 at *3.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.


**IT IS SO ORDERED.**
July 14, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court